E-FILED
Thursday, 25 June, 2026  02:09:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 649, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-04158-SLD-RLH |
| TYRO CONSTRUCTION, INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff International Union of Operating Engineers Local 649's ("the Union") motion for default judgment, ECF No. 10. For the following reasons, the motion is GRANTED.

## BACKGROUND[1]

Plaintiff, a labor organization, entered into a collective bargaining agreement ("CBA") with the Associated General Contractors of Illinois, effective from April 1, 2020, through March 31, 2025. Defendant Tyro Construction, Inc. ("Tyro"), is a signatory to the CBA and is bound by its provisions. Article 21 of the CBA provides that disputes that cannot be resolved by an employer and the business manager of the Union are referred to a Negotiating Committee that "will meet and attempt to adjust the dispute." CBA 21, Compl. Ex. A, ECF No. 1-1.

In May 2024, Tyro failed to timely pay four operating engineers—Johnathan Starcevich, Lester Atwood, Emily Emerick, and Jared Biggs. The same month, Tyro allowed eight hours of

---

[1] Unless otherwise noted, the facts related herein are taken from the Complaint, ECF No. 1. Exhibits attached to the complaint are properly considered part of the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The Court accepts the allegations relating to liability as true by virtue of Defendant's default. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).

bargaining unit work to be performed by a non-bargaining unit employee, denying Jared Biggs the opportunity to perform the work.

On July 3, 2024, the Union filed a grievance on behalf of employees who performed work for Tyro, stating that Tyro had violated several articles of the CBA relating to pay, benefits contributions, and referral of workers from the Union. On September 17, 2024, the Negotiating Committee convened and issued a finding that Tyro violated the CBA. The Negotiating Committee ordered Tyro to pay a total of $3,263.32, broken down as follows:

i.      $746.72 payable to Johnathan Starcevich;

ii.     $746.72 payable to Lester Atwood;

iii.    $746.72 payable to Emily Emerick;

iv.     $697.96 payable to Jared Biggs;

v.      $325.20 in fringe benefits payable to several fringe benefits funds.

All payments were to be made within 30 days of the hearing. Defendant has not complied with the Negotiating Committee's decision.

In September 2025, the Union brought a two-count complaint (I) asking the Court to confirm the Negotiating Committee's award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–402, and, alternatively, (II) seeking identical relief under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–197, for breach of the CBA. Mem. Supp. Mot. Default J. 7, ECF No. 11. Tyro did not answer the complaint and, on February 26, 2026, the Court entered Tyro's Default. *See* Feb. 24, 2026 Text Order.

## DISCUSSION

### I.    Legal Standard

The Federal Rules of Civil Procedure allow courts to enter judgment by default against a party that fails to plead or otherwise defend against suit.  Default judgment is a two-step process.  First, after a party fails to plead or otherwise defend, the Court must enter that party's default.  *See* Fed. R. Civ. P. 55(a).  Once default has been entered, the opposing party may move for default judgment pursuant to Rule 55(b).  To be entitled to default judgment, a plaintiff "must establish his entitlement to the relief he seeks."  *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).  In determining whether a plaintiff is entitled to relief, the Court accepts as true all well-pleaded allegations of the complaint relating to liability, but not those relating to damages.  *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  The amount of any damages must be definitely established.  *Id.*  This can be done at a damages hearing or through documentary evidence or affidavits.  *Id.*

### II.    Analysis

The Union brought counts under both the FAA and the LMRA.  "[A]s a technical matter, in seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the LMRA, not the FAA."  *Part-Time Fac. Ass'n at Columbia Coll. Chi. v. Columbia Coll. Chi.*, 892 F.3d 860, 864 n.3 (7th Cir. 2018) (quotation marks and alteration omitted).  However, "arbitration under the LMRA and the FAA are generally subject to the same governing principles."  *Id.* (quotation marks omitted).  Under the LMRA, courts have jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).

3

This jurisdiction "include[s] a request to enforce (or vacate) an award entered as a result of the procedure specified in a collective bargaining agreement for the arbitration of grievances." *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017).  As emphasized by all levels of courts, the LMRA reflects a policy favoring the enforcement of arbitration awards because "[w]hen Congress conferred jurisdiction on the federal judiciary over disputes arising under collective bargaining agreements, it meant for [courts] to support and reinforce, rather than displace, the arbitration process." *Id.*  Accordingly, a court's role is "very limited." *Ameren Ill. Co. v. Int'l Bhd. of Elec. Workers*, 906 F.3d 612, 616 (7th Cir. 2018) (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960)).  It will confirm an award so long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  An award generally does so if it is rooted in an interpretation of the CBA, even if in doing so the arbitrator erred in making factual or legal conclusions. *See Ameren Ill. Co.*, 906 F.3d at 616.  Courts will overturn arbitration awards only in a very limited set of circumstances, such as if the arbitrator "exceeded the scope of his submission." *Id.* at 617 (quotation marks omitted).

The first, threshold question is whether the dispute resolution process outlined in the CBA qualifies as "arbitration."  Article 21 nowhere describes the process as such.  It states instead:

> If disputes cannot be resolved by the EMPLOYER and the Business Manager of the UNION, then within forty-eight (48) hours of notification (excluding Saturdays, Sundays and Holidays) a committee consisting of at least one member each from the EMPLOYER side and the UNION side of the negotiating committee of this Agreement will meet and attempt to adjust the dispute.

> There shall be no strike or lockout until the procedures set forth in the previous paragraph has reached an impasse.

CBA 21.

In the Seventh Circuit, when determining whether a contractual provision constitutes an agreement to arbitrate, courts look to state contract law. *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781–82 (7th Cir. 2014); *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co.*, 104 F.4th 978, 991 (7th Cir. 2024) ("An arbitration agreement is just a type of contract, and the FAA does not itself provide a substantive law governing the formation or general interpretation of contracts, so ordinary state contract law always fills in crucial gaps in any arbitration agreement."). In this case, Illinois law applies since, in the absence of a dispute, the Court applies the law of the forum state. *Kass v. PayPal Inc.*, 75 F.4th 693, 701 (7th Cir. 2023). In deciding whether an agreement to arbitrate exists, there is no presumption favoring arbitration. *Druco Rests.*, 765 F.3d at 781.

Although there are some exceptions, in Illinois, arbitration is generally understood to be a binding alternative to judicial resolution of a dispute. *See Am. Fam. Mut. Ins. Co. v. Baaske*, 572 N.E.2d 308, 310 (Ill. App. Ct. 1991). In determining whether such an agreement constitutes arbitration, the Illinois Supreme Court has suggested that the FAA uses "arbitration" as a term of art that is defined according to federal law. *See Borowiec v. Gateway 2000, Inc.*, 808 N.E.2d 957, 968–70 (Ill. 2004) (citing *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350–51 (3d Cir. 1997)), for the following definition of arbitration under the FAA: "the essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion."). This would comport with precedent in several other circuits that found the definition of "arbitration" under the FAA to be a question of federal law. *See Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6 (1st Cir. 2004) ("That a uniform federal definition [of arbitration under the FAA] is required is obvious to us."); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1239 (11th Cir. 2008)

(looking to federal judicial precedent when defining "arbitration" under the FAA). District courts in this circuit have applied a federal definition of "arbitration" under the FAA to determine whether a dispute resolution process qualified as arbitration under the LMRA. *See, e.g.*, *Brock Indus. Servs., LLC v. Laborers Int'l Union of N. Am.*, No. 16-CV-780-NJR-DGW, 2017 WL 1132621, at *4 (S.D. Ill. Mar. 27, 2017). Following this example is not contrary to the Seventh Circuit's instruction in *Druco* since the substance of the CBA—"who promised to do what"—remains governed by state law, it is only "whether what has been agreed to amounts to 'arbitration'" that "depends on what Congress meant by the term in the [FAA]." *Fit Tech, Inc.*, 374 F.3d at 6.

Since it is apparent that the parties agreed to be bound by the terms of Article 21 of the CBA, the only remaining question is whether the dispute resolution process described in Article 21 amounts to "arbitration." Given the similarities between the FAA and LMRA, *see Part-Time Fac. Ass'n*, 892 F.3d at 864 n.3, this question is rightly determined with reference to FAA's definition of "arbitration" under federal law. The Seventh Circuit has not directly addressed what procedures qualify as "arbitration," but federal law is clear that the presence of the word "arbitration" in an agreement is not dispositive. *See Fit Tech, Inc.*, 374 F.3d at 7 ("Whether the accounting remedy is 'arbitration' . . . . does not depend on the nomenclature used in the agreement."). The Eleventh Circuit has articulated four factors that are common indicia of arbitration: "(i) an independent adjudicator, (ii) who applies substantive legal standards (*i.e.* the parties' agreement and background contract law), (iii) considers evidence and argument (however formally or informally) from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties, typically by awarding damages or equitable relief." *Advanced Bodycare Sols.*, 524 F.3d at 1239; *see also Fit Tech, Inc.*, 374 F.3d at 7 (describing

"common incidents of arbitration" as "an independent adjudicator, substantive standards . . . , and an opportunity for each side to present its case"). "The presence or absence of any one of these circumstances will not always be determinative, and parties have great flexibility under the FAA to select pre-packaged dispute resolution procedures, or to craft their own." *Advanced Bodycare Sols.*, 524 F.3d at 1239.

Article 21 does not describe the dispute resolution procedure with specificity, but the process is rightly deemed arbitration, especially considering how it was applied in this case. Article 21 clearly anticipates the submission of disputes to an independent adjudicator: "a committee consisting of at least one member each from the EMPLOYER side and the UNION side of the negotiating committee of this Agreement." CBA 21. Since a decision by the Negotiating Committee purports to bar strikes or lockouts, *see id.* ("There shall be no strike or lockout until the procedures set forth in the previous paragraph has reached an impasse."), it is also evident that Article 21 intended to decisively settle the rights of the parties. Further, agents of both parties to the CBA submitted affidavits stating that "[i]t was the intention of the parties to the Articles of Agreement that the Negotiating Committee's Decision be final and binding on the parties and enforceable in federal court." Kazenske Decl. 2, Compl. Ex. C, ECF No. 1-3; Shreves Decl. 2, Compl. Ex. D, ECF No. 1-4.

As effectuated in this case, during adversarial proceedings, representatives of Tyro and the Union presented their arguments, including testimony, to the Negotiating Committee, which returned a decision that purported to resolve the rights of the parties by awarding damages. *See generally* Negotiating Committee Decision, Compl. Ex. E, ECF No. 1-5; Kazenske Decl. 2; Shreves Decl. 1 (stating that both parties participated fully in the process before the Negotiating Committee). The eventual award was rooted in specific findings that Tyro violated the same

four sections of the CBA cited in the grievance petition.  *See generally* Negotiating Committee

Decision.  In this case, then, the dispute resolution process met each of the indicia of arbitration

identified in *Advanced Bodycare Solutions* and *Fit Tech, Inc.*  Though this procedure was not

laid out in the CBA itself, the complaint establishes that both parties fully participated in this

process that was, in effect, "arbitration in everything but name," *Fit Tech, Inc.*, 374 F.3d at 7.

Given Tyro's participation in the process, the brevity of the arbitration clause in the CBA cannot

vitiate a process that functionally adhered to all of the requirements of arbitration.  *See Fortune,

Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) ("It would be

unreasonable and unjust to allow [the defendant] to challenge the legitimacy of the arbitration

process, in which he had voluntarily participated over a period of several months . . . .").

Having established that the decision by the Negotiating Committee is properly considered

arbitration, it follows readily that the decision drew its essence from the CBA.  A grievance

regarding Tyro's violation of four articles of the CBA was submitted to the Negotiating

Committee pursuant to the "Disputes" article of the CBA.  *See generally* Grievance

Documentation, Compl. Ex. B, ECF No. 1-2.  The eventual award was rooted in specific findings

that Tyro violated the same four sections of the CBA cited in the grievance petition.  *See

generally* Negotiating Committee Decision.  These provisions, including articles regarding

referral of workers by the Union (Article 4), pay (Article 18), and fringe benefits contributions

(Article 25), are related to the factual circumstances underlying the submission of the grievance.

*See generally id.*  The Court therefore finds that the allegations of the complaint establish Tyro's

liability under the LMRA.

The Union has also submitted documentary evidence sufficient to definitely establish the

amount of damages due.  The proper remedy for a suit brought under the LMRA to enforce an

arbitration award is simply to confirm the award and thereby "place[] the weight of a court's contempt power behind the award." *Unite Here Local 1*, 862 F.3d at 596. The Court therefore need not independently evaluate the appropriate compensation for a violation of the CBA to confirm the Negotiating Committee's decision. The Complaint establishes that the Negotiating Committee awarded $3,263.32, payable as follows: $746.72 to Johnathan Starcevich; $746.72 to Lester Atwood; $746.72 to Emily Emerick; $697.96 to Jared Biggs; and $325.20 in fringe benefits, distributed as described in the arbitration award. *See* Negotiating Committee Decision 4.

The Union also requests $405.00 in filing fees and $188.60 in service costs. Mot. Default J. 5. Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The docket indicates that the $405.00 filing fee was paid, so such costs are awarded to the Union pursuant to Rule 54. However, the Union has not submitted any documentation substantiating the claimed $188.60 in service costs. If it seeks to recover these costs, it may file a post-judgment bill of costs with documentation supporting its request. *See* Civil LR 54.1.

## CONCLUSION

Accordingly, Plaintiff International Union of Operating Engineers Local 649's motion for default judgment, ECF No. 10, is GRANTED. Defendant Tyro Construction, Inc. is ORDERED to pay the sum of $3,263.32 as stated in the Negotiating Committee's decision, together with $405.00 in costs. The Clerk is directed to enter judgment and close the case.

Entered this 25th day of June, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE